IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CX REINSURANCE COMPANY LIMITED,** *f/k/a* **CNA REINSURANCE COMPANY LIMITED** | \* \* \* |
| **Plaintiff,** | \* \* |
| v. | Case No. CCB-15-3056 \* \* |
| **SINGER REALTY, INC.,** *et. al*, | \* \* |
| **Defendants.** | \* \* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATIONS**

Pursuant to Judge Blake's February 9, 2017 Order, this matter has been referred to me for discovery disputes and related scheduling matters.[1] [ECF No. 80]. Presently pending is Plaintiff CX Reinsurance Company Limited's ("CX Re") Motion to Compel Intervenor-Defendant Trezhur Davis's ("Davis") Responses to Requests for Admission [ECF No. 137-1], Davis's Opposition [ECF No. 140], and CX Re's Reply [ECF No. 144]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, I recommend that Davis be DISMISSED from this case and that CX Re's Motion to Compel be DENIED.

**I.  BACKGROUND**

In this action, CX Re seeks to rescind commercial general liability insurance policies ("Policies") issued to Singer Realty, Inc. ("Singer Realty"), and other named insureds in 1997 and 1998. Pl.'s Second Am. Compl., [ECF No. 39 ¶¶ 1 & 14]. The Policies provide insurance coverage for certain risks, including lead exposure, relating to specified residential rental properties in Baltimore, Maryland. *See* Policies, [ECF Nos. 1-1, 1-2].

---

[1] I have issued a Report and Recommendations because this discovery dispute implicates the potentially dispositive issue of whether Davis lacks standing to proceed as a party.

In particular, CX Re alleges that Singer Realty made misrepresentations of material fact in the Application upon which the Policies were issued. *Id.* ¶ 1. Specifically, CX Re avers that Singer Realty falsely answered "No" to Question 16 of the Application, which asks whether "the [i]nsured ever had any lead paint violations in the building(s)[.]" *Id.* ¶¶ 25-32. CX Re argues that, if Defendants had answered this question truthfully, CX Re would not have issued the Policies, or would have issued the Policies subject to substantially higher premiums or substantially different terms. *Id.* ¶ 47. CX Re asserts that it first learned of the misrepresentation regarding Question 16 of the Application while conducting "a broad underwriting review of many insureds[]" in August, 2015, and it filed this action shortly thereafter in October, 2015. *Id.* ¶¶ 33-34.

On March 16, 2016, Davis filed suit against Singer Realty, seeking damages for injuries sustained from lead paint exposure at a property covered by CX Re's policy (the "Kenwood Property"). [ECF No. 137-1 ¶¶ 1, 7]; [ECF No. 140 at 1]. Thus, to protect her interests and demonstrate that CX Re's policy was "not subject to rescission or void *ab initio*, [but] rather remain[ed] in full force and effect[,]" Davis intervened in this action on January 13, 2017. [ECF No. 76]; [ECF No. 137-1 at 3]. On September 5, 2017, CX Re served its First Set of Requests for Admission to Davis [ECF No. 137-2], and, on October 5, 2017, Davis served her responses [ECF No. 137-3]. Five days later, on October 10, 2017, Davis filed a joint stipulation dismissing her State lead paint claims with prejudice against Singer Realty. [ECF 140-1]. The instant discovery dispute revolves around CX Re's Request for Admission ["RFA"] Nos. 4 and 5 and Davis's responses thereto. [ECF No. 137-1 at 3-5]. The Requests and Responses are as follows:

> **Request No. 4:** From the time of your birth until at least 1999, the Kenwood Property had paint peeling, flaking, or chipping off of its surfaces.
>
> **Response:** Intervenor Defendant objects to this Request because it is not relevant to the claims currently in the case. CXRe has sought rescission based on alleged

2

statements on an insurance application related to lead paint violations at the properties included in the policies' schedule of locations. The claims do not assert that the insured misrepresented facts about the condition of the surfaces at the applicant's property. Based on this objection, the request is denied.

**Request No. 5:** From the time of your birth until at least 1999, the Kenwood Property had lead paint on its surfaces.

**Response:** Intervenor Defendant objects to this Request because it is not relevant to the claims currently in the case. CXRe has sought rescission based on alleged statements on an insurance application related to lead paint violations at the properties included in the policies' schedule of locations. The claims do not assert that the insured misrepresented facts about the condition of the surfaces at the applicant's property. Based on this objection, the request is denied.

[ECF No. 137-3 at 3-4]. CX Re argues that RFA Nos. 4 and 5 seek relevant information because, if the Kenwood Property had paint peeling, chipping, or flaking from its surfaces or had "lead paint on its surfaces from 1995-1999, that would prove that Singer's 'No' answer to Question[s] 12 [and 14 were] false" and, as such, are germane to the issue of whether CX Re is entitled to rescission.[2] [ECF No. 137-1 at 5]. In her Opposition, however, Davis argues that, because she no longer has a claim against Singer Realty, "she lacks an interest in the CXRe policies and has no standing as a party in [this] action." [ECF No. 140 at 1]. As such, Davis contends that she is "not a proper party to this action" and that CX Re is "not entitled to seek from her responses to requests for admission."[3] *Id.* at 2. Meanwhile, CX Re argues that, after causing it to incur significant litigation expenses for almost a year, Davis utilized a "tactical ploy" to moot her interest in this litigation to prevent it "from obtaining information that would prove its right to rescind to the Policies . . . ." [ECF No. 144 at 6]. Thus, CX Re requests that

---

[2] Questions 12 and 14 of the Application ask, respectively, whether there was "any lead paint on any interior or exterior surface of the building" or "any paint chipping or flaking, or otherwise coming off any interior or exterior surface of the building[.]" [ECF No. 137-1 at 1-2]; [ECF No. 1-3 at 2]. CX Re, however, did not allege in its second amended complaint that Singer Realty's answers to these two questions were false. [ECF No. 39].

[3] In fact, the parties agreed (during a December 20, 2017 telephone conference with the Court) that, absent the existence of this discovery dispute, they would file a joint stipulation of dismissal of all claims involving Davis in this case.

3

this Court compel Davis to answer RFA Nos. 4 and 5 before dismissing her from this action or, alternatively, to "deem [RFA] Nos. 4 and 5 admitted under Rule 36(a)(6)." *Id.*

## II. TREZHUR DAVIS LACKS STANDING AND MUST BE DISMISSED

Federal courts are restricted to adjudicating only "cases and controversies." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). "'[P]erhaps the most important' condition of justiciability[,]" the doctrine of standing "ensures that a plaintiff has a personal stake in the outcome of a dispute, and that judicial resolution of the dispute is appropriate." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). While "most defendants are pulled into a case unwillingly[,] [] where a party tries to intervene as another defendant," federal courts "require[] it to demonstrate Article III standing." *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015) (citation omitted). Under such circumstances, "the standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Id.* (citing *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013)). When a claimant lacks standing, "federal courts have no subject matter jurisdiction over [the] claim[s]." *Davis Vision, Inc. v. Maryland Optometric Ass'n*, 187 F. App'x 299, 302 (4th Cir. 2006).

As a specific application of standing, "[a] court is deprived of jurisdiction over a case when the case becomes moot" because they "'have no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)); *see also Townes v. Jarvis*, 577 F.3d 543, 546 (4th Cir. 2009) (stating that "'[m]ootness has been described as the doctrine of standing set in a time frame'") (quoting *Arizonans for Official English v. Arizona*,

520 U.S. 43, 68 n.22 (1997)). "A case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Williams*, 716 F.3d at 809 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

As a result of her underlying lead paint action against Singer Realty, on January 13, 2017, Davis was granted permissive intervention to protect her interest in the Policies and to demonstrate that they are "are valid and enforceable" and not subject to rescission. [ECF No. 76]; [ECF No. 46-1 at 5-6, 23]; *see* Fed. R. Civ. P. 24(b) (permitting anyone to intervene who: "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact"). On January 13, 2017, Davis filed an Answer and Counterclaim to CX Re's Complaint. [ECF Nos. 76, 46-1]. Thereafter, however, on October 10, 2017, Davis dismissed with prejudice all of her claims against Singer Realty in her underlying lead paint action. [ECF No. 140-1]. At that time, any cognizable interest that Davis had in the Policies was extinguished – whether CX Re's insurance policies remain valid or, alternatively, are subject to rescission now fails to affect Davis in any manner. As such, the case is moot as to Davis's Counterclaim and defenses because she "'lack[s] a legally cognizable interest in the outcome.'" *Williams*, 716 at 809 (quoting *Powell*, 395 U.S. at 496). This Court thus lacks subject matter jurisdiction over her claims and defenses, and, as a result, Davis is no longer a proper party to this action. *Maryland Optometric Ass'n*, 187 F. App'x at 302. Davis, therefore, must be dismissed. *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (stating that, if standing requirements are not satisfied, "the case must be dismissed") (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Federal Rule of Civil Procedure 36(a)(1) provides that "[a] party may serve on any other *party* a written request to admit[] . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the

genuineness of any described documents." Fed. R. Civ. P. 36 (emphasis added). Because the scope of Rule 36 only extends to parties, Davis need not respond further to CX Re's written requests for admission. CX Re will be able to seek discovery from Davis as a non-party witness. *See F.D.I.C. v. Becker*, 166 F.R.D. 14, 16 (D. Md. 1996) (holding that, though the defendant wished to keep the plaintiff as a party in the case "to facilitate discovery in the third-party claim," the plaintiff was entitled to dismissal and that the defendant could "always" seek discovery "in the manner parties normally seek discovery from non-parties").

CX Re acknowledges that it "could later depose Davis, [but] requiring [it] to do so would further, and unnecessarily, increase the cost of obtaining this straightforward information." [ECF 144 at 6]. However, even if RFA Nos. 4 and 5 were deemed admitted, the admissions could not be directly imputed to the remaining defendant, Singer Realty. *See Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (defining judicial admissions as "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding [only] upon the party making them") (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)). Thus, CX Re would still need to depose Davis or to call her as a witness at trial. Regardless of the potential expense involved, the lack of jurisdiction over Davis at this juncture mandates her dismissal and forecloses treating her as a party for discovery purposes.

### III. FED. R. CIV. P. 36(a)(6)

CX Re next argues that, while a proper party to this action, Davis made "meritless" objections to RFA Nos. 4 and 5. [ECF No. 137-1 at 5]. Rule 36(a)(5) provides that, in responding to requests for admission, "[t]he grounds for objecting to a request must be stated." Fed. R. Civ. P. 36(a)(5). "Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6).

6

CX Re relies on *Erie Insurance Property & Casualty Company v. Johnson*, 272 F.R.D. 177 (S.D.W. Va. 2010) and *House v. Giant of Maryland LLC*, 232 F.R.D. 257 (E.D. Va. 2005) to support its position that RFA Nos. 4 and 5 should be deemed admitted. [ECF No. 144 at 6]. In *Johnson*, the Court deemed certain requests admitted under Rule 36 because it found that, in a case for damages arising from an automobile accident, the insurer's (Erie Insurance) objections thereto were "wholly inappropriate." 272 F.R.D. at 184. Specifically, Erie's objections that the requests sought information "not reasonably calculated to lead to the discovery of admissible evidence" were not proper because they misconstrued the purpose of Rule 36, which seeks to "narrow the scope of issues for trial." *Id.* Additionally, the Court found Erie's remaining objections that it did not "possess sufficient information to either admit or deny" the requests "highly questionable" because the requests pertained to information that Erie should have, or reasonably could have, known. *Id.* Meanwhile, in *House*, the Court only imposed sanctions on defendants for failing to admit certain requests for admission that the plaintiff subsequently proved at trial. 232 F.R.D. at 258. By sanctioning the defendants, the Court determined that they failed to satisfy any of the safe harbors, namely that:

> (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

*Id.* at 260 (citing Fed. R. Civ. P. 37(c)(2)).

Here, Davis objected to RFA Nos. 4 and 5 on the grounds that the information sought was "not relevant to the claims currently in the case." [ECF No. 137-3 at 3-4]. Specifically, Davis argued that CX Re's sole allegation was that Singer Realty falsely answered "No" to Question 16 of the Application, which asked whether "the [i]nsured ever had any lead paint violations in the building(s)[.]" [ECF No. 137-3 at 3-4]; Pl.'s Second Am. Compl., [ECF No. 39

7

¶¶ 25-32]. Thus, according to Davis, because the Requests only sought information about the condition of the surfaces (i.e., whether lead paint was present and/or flaking) at the applicant's property, they were irrelevant to whether the property had previously received lead paint violations. [ECF No. 137-3 at 3-4]. Thus, unlike the requests in *Johnson* and *House*, Davis was not feigning a lack of knowledge of, or access to, the information sought. Instead, because Rule 36 requires, "[e]ach request for admissions [to] be direct, simple and 'limited to singular relevant facts[,]'" Davis contended that the Requests fell outside of its scope. *United States v. Consol. Edison Co. of New York*, No. CV-88-0049 (RJD), 1988 WL 138275, at *2 (E.D.N.Y. Dec. 15, 1988) (quoting *SEC v. Micro–Moisture Controls*, 21 F.R.D. 164, 166 (S.D.N.Y. 1957)). Because the condition of the paint at the properties was not at issue based on the allegations in the second amended complaint, Davis's objections were, at minimum, arguable. *See Stern v. O'Quinn*, 253 F.R.D. 663, 670 (S.D. Fla. 2008) (stating that "relevance serves as the gate through which all discovery requests must pass"); *Estate of Cederloff v. United States*, No. CIV.A. DKC 08-2863, 2010 WL 157512, at *2 (D. Md. Jan. 13, 2010) (sustaining objections to requests for admissions on the grounds that the requests were "wholly irrelevant"). By the time CX Re filed its Motion to Compel on October 24, 2017, Davis's underlying State lead paint action against Singer Realty was dismissed with prejudice, rendering her claims and defenses, and this dispute, moot. *See supra* Part II. As such, this Court cannot reach the merits of the parties' discovery dispute – whether RFA Nos. 4 and 5 sought, or did not seek, relevant information, and thus whether Davis's objection was justified. Therefore, there is no basis upon which this Court could deem the requests admitted under Rule 36.

IV. **CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. The Court DISMISS Trezhur Davis as an intervenor-defendant; and

2. The Court DENY CX Re's Motion to Compel [ECF No. 137-1] as moot.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: January 3, 2018

/s/
Stephanie A. Gallagher
United States Magistrate Judge